Mr. Del Forge, whenever you're ready. Judge Duncan, may it please the court. The Supreme Court of the United States has insisted that in ineffective assistance of double deferential review applies. Double deferential review. The issue is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. Was there a reasonable, is there a reasonable argument in this case? Absolutely. Counsel relied on the greatest legal engine ever invented for the ascertainment of truth. Traditional skillful cross-examination. That's Kentucky v. Stencer, U.S. Supreme Court, 1987. Counsel thoroughly cross-examined both of the eyewitnesses in this case, Mr. and Mrs. Overton. He elicited the weaknesses, if any, in those identifications. He brought out the fact that they had seen this defendant in the previous trial three years earlier, same type of home invasion crime that occurred, that counsel elicited the fact that the victims had seen the defendant at that trial. He elicited the fact that the wife identified the defendant only after her husband had said the Moore boys did it. He elicited, defense counsel elicited, the fact that Lynnwood Moore, the brother, could not have been present at the time because he was in federal prison at the time. Counsel presented an alibi defense through petitioner and his mother that he wasn't there. Counsel elicited all of this information that the psychologist's affidavit says that she would have presented had she testified. Defense counsel elicited this same type of evidence on skillful cross-examination. He elicited the fact that the victims were under high stress. He elicited the fact that the victim, Mr. Overton, was looking down the barrel of a gun when the shooting occurred. He elicited the fact that there was a quote subconscious transference by pointing out that he had been, that he had seen the defendant at the previous trial. All of these circumstances that the psychologist, now the defense is saying that cross-examination is no longer the greatest legal engine for determining truth, but the psychologist, the psychology professor at your local university is now the greatest engine. So this case must be reversed. You surely can't be saying that it would have been inappropriate for counsel to have introduced it. No. Absolutely, Judge Duncan. You're right. There's a big difference between presenting, being allowed to present, and the judge. We don't even know if the state judge would have allowed this testimony. It's abuse of discretion standard as to whether it would have even allowed the expert to testify. There's a huge difference between saying that eyewitness expert evidence is admissible or potentially admissible in a case and crossing the rubicon and saying, oh, but counsel, you're ineffective unless you do so. And there's not another case in the country like this. This case is novel. As a matter of fact, Judge Fox admitted in his order, he admitted in his order, he says that the court recognizes that although this judgment amounts to no more than a straightforward application of Strickland to the unique facts of this case, the court's decision may be considered novel. And that's at Joint Appendix 720. Novelty and federal habeas do not mix. It's like oil and water. There is no Supreme Court precedent, clearly established federal law by the United States Supreme Court that requires defense lawyers to go out and hire expert witnesses on eyewitness identification in order to provide effective assistance. When we cross that rubicon, then every defense lawyer, there's a hundred cases being tried in North Carolina this week, just like this case. Those lawyers, every lawyer is going to be looking over his shoulder, wondering, wow, am I going to be found ineffective because I had an eyewitness identification case and now holy cow, the federal court on federal habeas are saying I've got to hire an expert witness. That is adding a level of due process that is not required. If that's going to be the standard, it cannot come from Raleigh. And with due respect, it cannot come from Richmond. It can only come from the United States Supreme Court. If they're going to mandate, if they're going to create this new rule that lawyers must hire expert witnesses, okay, you've got the Ninth Circuit and the Sixth Circuit saying that we don't require this, that we're not going to require these psychologists to come in and provide this sort of expert eyewitness identification. We will rely on the greatest legal engine ever invented for the discovery of truth. We will have relied on it for 300 years. And that is good enough. Skillful cross-examination. This jury was perfectly capable of understanding and seeing, yes, it was a cross-racial identification. Everybody in the courtroom knew that it was a cross-racial identification, okay? Everybody knew that the gun, that the victims were under stress because there was a gun shoved in his face, okay? Everybody knew that. Everybody knew there was a subconscious transference issue because the defendant had been charged with a similar type of crime against the same victim three years before. And that in their minds, they might be looking back and thinking back about what that previous defendant looked like and putting his face in the face of the perpetrator of the incident crime. All of that came out. So absolutely, there is an objectively reasonable argument that defense counsel's performance in this case satisfied Strickland's deferential standard. This case has to be reversed. We cannot have, in North Carolina, every defense lawyer looking over their shoulder, wondering, for one thing, wondering whether or not they're going to be found ineffective for not hiring an expert witness on eyewitness identification, okay? This adds a new level of due process. What would happen is you have a defense attorney, they go to their local college, and they get the psychology professor to come in. And now, the prosecution, they're going to go to the other college, and they're going to get the other psychologist to come in. I'm sorry. Why is all this argument of any moment? I mean, you're making a legal point. You're not making a factual scenario of future cases argument. What you're saying is, if the court, as a matter of its discretion, could have refused to admit the testimony, it cannot be the basis, applying Strickland and Harrington v. Richter cannot be the basis of an award of habeas relief. So, I don't understand why you're trying to embellish your argument with a parade of horribles. Your Honor, having argued this case in paper in front of the district court and been unsuccessful, I figured that I better put forward everything I can think of to emphasize the importance of this case to the bar in North Carolina, the fence bar in North Carolina. This is as an important case as any case you've heard today. Every case we hear, Mr. Del Forge, is an important case. We don't make those distinctions. Right. And that's why I said as. Excuse me. I'm sorry. Please do not. I'm sorry. I apologize. I agree. I would prefer not to trivialize the nature of the issue, particularly on these facts, which are fairly unique. I take your legal point. I'm not taking issue with that. So, why don't we see. Do you have any questions? Was there anything else you wanted to add? It's also Teague Bard. The U.S. Supreme Court in Chinese versus United States just this year has said that whether a claim is Teague Bard turns on whether it is novel. And Judge Fox, in his order, has acknowledged that this is a novel decision. And so, there per se, this claim is Teague Bard. There's a cross-appeal issue. I'm not sure when the court wants to hear that now. I understand that an appellee is not asked for separate time. So you could just reserve. You can just address the cross-appeal and rebuttal if you wish. Thank you. Ms. Grimaldi. Good morning. My name is Laura Grimaldi. I am an attorney with North Carolina Prisoner Legal Services, and I represent Thomas Moore. Could you speak more directly into the mic, please? I have never used a microphone before. Is that better? Thank you. My client was wrongfully convicted on unreliable eyewitness identifications that were not meaningfully challenged by trial counsel. On the fact that this case, trial counsel was constitutionally ineffective for failing to obtain an expert in eyewitness identification. How could you be constitutionally ineffective for failing to do something that the court was within its discretion to refuse or grant? I mean, just filling in a little bit, and I guess maybe it varies from state to state, but before I started this job, I had about 30 years' experience in Virginia. This evidence would never have been let in. I've never heard of a court in Virginia allowing an expert testimony regarding the reliability of eyewitness testimony because the general rule applied there is that it's a comment on the credibility of other witnesses testifying in the trial. So if you have courts within their discretion able to refuse to admit this kind of testimony, how can you have a constitutional deprivation of a right? Well, the standard is abuse of discretion, and I would submit that had this testimony been offered and was not permitted, and it would have been an abuse of discretion on How would it? I mean, I know the facts. I mean, the facts are troubling. There's no question. I mean, saying it was the Moore boys and one of them wasn't even there. So I mean, I agree with you. It's not a case that is a slam dunk by any matter of means. But why would it be an abuse of discretion on the facts? Perhaps you could build the evidence that makes it an abuse of discretion. Okay. In offering the testimony, counsel would show that each, that the identifications in this case, all of the phenomenon that affect reliability, the presence of a weapon, stress, cross-racial identification, the fact that there was a previous acquaintance in a stressful experience, feedback factor, unconscious transference, all of these items are not within the common sense of juries. And you're making a very good factual argument, and those facts are present potentially as a potential impact. But Judge Keenan's question I took to be a more legal question. How can a lawyer be held to have been constitutionally defective if a judge could have, and under North Carolina law as well, could have, within its discretion, refused to admit it? If I'm understanding you correctly, though, when it comes to discretion, that discretion is not boundless. That discretion can be abused, and it would have been abused had this been offered. Right. So what about this case would have made it an abuse of discretion for the court to have denied it? And if the court just said, I don't feel comfortable with this kind of testimony, you know, this witness is really going to be saying the other witnesses aren't credible. Now, what would have been wrong, or what would have been an abuse of discretion under the facts here? Not what the expert would have said, but what about this case would have made it an abuse of discretion to refuse to admit this kind of testimony? Well, first of all, this type of testimony is admissible in North Carolina. Right. I understand that. It's a matter of discretion. It has been. It's not a matter of right. Mm-hmm. Okay. So if then the court would have to exercise its discretion, wouldn't we have to find that the court necessarily would have abused its discretion in refusing counsel's request? In other words, part of the prejudice inquiry under Strickland would be that it had to have made a difference, a difference detrimental to the defendant. And so we would have to find not only an abuse of discretion under the case, but also that something about that, in other words, that the court would have been required to grant that testimony as a matter of discretion. And why would it have been required to do that, even though it was entitled to do that under North Carolina law? Well, had the court denied this testimony, the jury would have been denied the information that they needed to appropriately weigh the testimony. What if the court thought that was speculative? Just because an expert has some studies that show that people who see a witness when there's a gun pointed at them, nervous, what if the court says, I don't have confidence with this study? I don't have confidence with this kind of testimony. You know, you've got some pretty strong arguments you can make on cross-examination, and I really would prefer not to inject this level of speculation by admission of the expert testimony. If the court said that, that would be an abuse of discretion? I believe so, in light of the fact that courts have found that cross-examination is not sufficient, or can be insufficient, I should say, to educate the jury on specific phenomenon, such as the unconscious transference, such as feedback factor, stress, the presence of a weapon particularly. Is there any evidence in the record that the defense lawyer even considered calling an expert witness? No, there is no evidence. Either way, I mean, there's just nothing in the record. Nobody ever asked him on the M.A.R. or anything like that? No. So we don't know that it was a matter of trial strategy, is what you're saying? We do not know that. I would submit, though, that there is no reasonable trial strategy to rely solely on cross-examination when the case rests solely on these identifications that blatantly exhibit factors that have been shown by decades of research to affect the reliability. Of course, as Mr. DeForest said, there's a hundred cases going on right now where that is exactly happening in North Carolina. They're doing ID, testing IDs by cross-examination only, right? Certainly. There are thousands of cases. In the grand majority, maybe one percent of the cases, or one-tenth of one percent of the cases, is an expert admitted on identification purposes. Would that be fair? I don't even, I can't even go touch the statistics. But the facts of this case are unique. We have the only evidence in this case against Mr. Moore were these identifications. In other jurisdictions, there are eyewitness-specific jury instructions to assist them in understanding that what you hear is not necessarily what you get. North Carolina does not have that. This case did not have that. The jury was instructed on basic credibility. And cross-examination is very efficient for challenging credibility. It can be useful for challenging reliability when it's addressing subjects that are within the common understanding, such as lighting conditions, the opportunity for a witness to see the defendant. And eyesight, there was certainly a lot to impugn the witnesses here. Yes. With. Yes. But cross-examination, and I would concede, actually, that counsel in this case brought out the elements that affect the reliability, but he could not bring out the effect of those elements on the reliability of his identifications. So he brought out that Mr. Overton, one of the victims in this case, only had a moment to see the person at the door before he shot. Can you tell us whether the degree to which this evidence is admitted in North Carolina? I know you said you wouldn't be able to. I do not know what the statistics are. I can tell you that by. Is it a rare phenomenon? I don't think. No, it's not a rare phenomenon. In 1985, the Knox Court in North Carolina said use of these experts is increasingly popular. And in 2006, for instance, there was a forum motion offered by the Offices of Indigent Defense Services to request funds for an ID expert. It was actually fairly common. I don't know the percentages, though. I was talking about what cross-examination can and cannot do, if you find that relevant. So cross-examination can bring out that there was a gun, that they were under stress, but it cannot bring out how that affects reliability. He brought out that Mrs. Overton made her identification only after she heard her husband say, it was those Moor boys, it was the same ones as last time. But counsel could not bring out the effect of those statements, the same unconscious transference, the same feedback factor that I've been discussing. He can certainly bring out that the witnesses are extremely confident in their identifications, but he cannot bring out that confidence is not related in any way whatsoever with accuracy. And counsel had a duty to explore all available avenues of impeaching the only evidence against his client. But there's no evidence that he did or he didn't, from what we've already talked about, whether he considered having an expert or he didn't consider or rejected having an expert, as a strategy, right? That's correct. Either one. It's a void. That's correct. The record is void on that. So the effect of upholding this, would it be to mandate this kind of testimony in every case? Certainly not. This case is... Why not? No. This case is not about whether every time there's eyewitness testimony, whether there must be an expert. This case is about these particular facts. Well, what would you have us say? What parameters, if we agree with you, what would we say? Actually, Judge Fox said it extremely well. He said that in a case where there is no evidence of guilt other than eyewitness of victim identifications, which blatantly present numerous grounds for questioning their reliability, grounds which are discussed in abundance in literature and judicial opinions but are not commonly known, counsel must reasonably investigate and consider whether to present available expert testimony. Those are pretty broad parameters. They're also a little spongy. Again, what makes this case different from other cases is that there are no corrective instructions that other courts have relied on, and there is no other testimony. So every case that I've read denying similar claims, the courts have relied on the fact that there has been some other evidence of guilt. The primary problem, or what I'm wrestling with here, is I think you make a very good point for direct appeal, but not only do we have Strickland, we have AEDPA, and AEDPA is just an even higher hurdle for us to get over in second-guessing what state courts have done. It's that doubly-deferential standard that Mr. Del Forge referred to. Well, I don't think that we need to go with—let me take a moment here—in his briefs, Mr. Del Forge relied very heavily on Harrington v. Richter and this double-deference. The trial court's decision was not only an unreasonable application of Strickland to the facts of this case, it was also based on an unreasonable determination of the facts in light of the record before it. The state court's findings were that the jury heard all of the evidence surrounding the identification of the defendant, and that the defendant does not suggest that there is any more evidence regarding this identification. And this is in the face of a very detailed expert affidavit explaining issues with these identifications. It appears that the state court did not acknowledge or consider the presence of that affidavit in his decision, and I believe that is objectively unreasonable. I do believe that he unreasonably applied Strickland to the facts of this case. It's a strong, ineffective assistance of counsel claim, but we don't even have to go there because his determination was based on such an unreasonable factual finding. What about Mr. Del Forge's point that this is Teague Bard? This is a straightforward application of Strickland to the facts of this case, and Teague was very clear that they were not just making a straightforward application of Strickland when they decided Padilla, but they were, in fact, addressing a threshold question of whether the information about deportation even was covered by the Sixth Amendment. I have found no Supreme Court cases stating that a straightforward application of Strickland was Teague Bard or, for that matter, not well-established federal law. So, yes, under the facts of this case, counsel was ineffective for failing to obtain an expert in identification. The identifications were suspect, and the jury was given a choice of believing either the alibi testimony or these two people coming in and saying he did it. They had no tools of which to understand that the witnesses may actually be mistaken, that they're not lying, they're not making a false accusation, but they are wrong. Thank you. Thank you. Mr. Del Forge? The answer to your question, Judge Keenan, is that a review of the published decisions, appellate decisions, are any indication as to how often this type of evidence is admitted. It's very rare. There are some published decisions. I found one fairly recent one here of State v. McLean in 2007, a North Carolina Court of Appeals decision that states that it's abuse of discretion standard on the admissibility for expert witnesses on fiability by witness testimony. Again, the issue, the critical outcome determinative issue in this case is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard. And I think clearly there is a reasonable argument that counsel satisfied Strickland's deferential standard. Unless there are any specific questions on that point, I'll move to the cross appeal issue. Okay. The cross appeal issue was the counsel's failure to object to a pistol, a ballistics report, SBI report, and related testimony. And that issue, counsel did not object. What counsel did was he neutralized that evidence on cross examination. He brought out the fact that the pistol was found five or six miles away from the crime and the police couldn't tag it to this particular offense. How do you neutralize irrelevant evidence that is most likely inadmissible? You can't just go pick up a pistol and bring it into a court where there's a pistol involved. You know, I'm sure your honor has been in court many times. Different lawyers approach evidence in different ways. If you read this transcript, this lawyer, reading between the lines, he was trying to show the jury what a reasonable person, he had gotten this man acquitted in the first case. He had gotten the case dismissed, same type of case, same defendant, same victims. He utilized skill for cross examination and he got the case dismissed against the man. If you read this case, what it appears to me, a reasonable reading of the transcript is, that he was trying to appear as reasonable and as non-streperous as he possibly could to the jury. And that was the way, okay, the state wants to introduce this pistol, they want to introduce this ballistic report that says that it's inconclusive, fine. He just points out on cross-examination that it doesn't implicate his client in any way. That is an objectively reasonable method of dealing with evidence put on by the state. Sure he could have objected. Sure he could have objected. He just chose a different method of neutralizing that evidence. And also the court of appeals, the state court of appeals found no plain error here. There is virtually no difference between our state plain error standard and the prejudice prong of Strickland. The plain error standard is probable impact. As a result of the error, would the jury probably have reached a different result? The standard of review, the prejudice standard under Strickland, is whether there is a reasonable probability of a different result. And in State v. Segros, which I cited by citation of additional authority, shows that there is virtually no difference between those two standards. If the court finds no plain error, then the court will find that there's no reasonable probability of a different result. It's a probability or a reasonable probability. There's no material difference between those two standards. So by the court of appeals finding no plain error, that found that there was no ineffectiveness, because there was no reasonable probability of a different result. Again, the critical point about this case is this is a federal habeas case. This demands deferential rule. Harrington v. Richter, the court said that defense counsel didn't have to hire an expert witness, an expert blood witness to counter the state's blood witness. But the lawyer could choose a strategy of skillful cross-examination of the witness. And that was perfectly legitimate and perfectly reasonable. And that is the reasonable thing that counsel did in this case. We really don't know that that was his strategy, because there's nothing in the record to say whether he considered hiring an expert and admitting an expert or not. There's just nothing there, right? That's right. But the U.S. Supreme Court says you must look at the record and say, is there any reasonable argument that counsel satisfied Strickland's deferential standard? And clearly there is. The decision of the district court must be reversed, the conviction reinstated, and this federal habeas action dismissed in its entirety. Thank you. Thank you, Mr. Delforge. Ms. Grimaldi, I notice that you are court appointed. We would like to thank you.
judges: Allyson K. Duncan, Barbara Milano Keenan, David C. Norton